No. 23-1272

United States Court of Appeals
for the Seventh Circuit

United States of America,
Plaintiff-Appellee,

vs.

Jonathan Smith,
Defendant-Appellant.

Appeal from the United States District Court
for the Central District of Illinois
Case No. 19-cr-30048
The Honorable Judge Sue E. Myerscough

Brief and required short appendix of
Defendant-Appellant, Jonathan Smith

Federal Public Defender
Central District of Illinois
300 W. Main Street
Urbana, Illinois 61801
Telephone: 217-373-0666
Fax:          217-373-0667
Email: elliot_louthen@fd.org

Thomas W. Patton
Federal Public Defender

Elliot J. Louthen
Assistant Federal Public Defender

Attorneys for Defendant-Appellant,
Jonathan Smith

**Oral Argument Requested**

# Circuit Rule 26.1 Disclosure Statement

Appellate Court No: 23-1272
Short Caption: United States v. Smith

☐ **PLEASE CHECK HERE IF ANY INFORMATION ON THIS FORM IS NEW OR REVISED AND INDICATE WHICH INFORMATION IS NEW OR REVISED.**

(1)  The full name of every party that the attorney represents in the case:

**Jonathan Smith**

(2)  The names of all law firms whose partners or associates have appeared for the party in the case (including proceedings in the district court or before an administrative agency) or are expected to appear for the party in this court:

**Federal Public Defender's Office for the Central District of Illinois**

(3)  If the party or amicus is a corporation: N/A
    i)    Identify all its parent corporations, if any; and

    **N/A**

    i)    list any publicly held company that owns 10% or more of the party's or amicus' stock:

    **N/A**

(4)  Provide the information required by FRAP 26.1(b) - Organizational Victims in Criminal Cases:

**N/A**

(5)  Provide Debtor information required by FRAP 26.1(c)1 & 2:

**N/A**

Attorney's Signature: _/s/ Elliot J. Louthen_      Date: _September 22, 2023_
Attorney's Printed Name:  Elliot J. Louthen

Please indicate if you are *Counsel of Record* for the      ☒ **Yes**
above listed parties under Circuit Rule 3(d).      ☐ No

Address:  Federal Public Defender      Phone Number:  (217) 373-0666
             300 West Main Street      Fax Number:        (217) 373-0667
             Urbana, Illinois 61801      Email:            elliot_louthen@fd.org

# Table of Contents

Circuit Rule 26.1 Disclosure Statement ........................................................................ii

Table of Authorities.................................................................................................v

Introduction and Summary of Argument....................................................................1

Jurisdictional Statement...........................................................................................3

Issue Presented for Review .....................................................................................4

Statement of the Case .............................................................................................5

Argument...............................................................................................................7

    I.    There is a categorical mismatch between the Supreme Court's narrow interpretation of the elements clause and Illinois's expansive interpretation of its robbery statute. ...............................7

        A.    *Borden* held that the elements clause only encompasses the defendant's "consciously directed" force.......................8

        B.    Illinois courts have heeded the General Assembly's command that recklessness attaches to robbery and expansively defined the offense's outer bounds.................11

    II.    Illinois courts routinely uphold robbery convictions premised on reckless force. ...............................................................16

        A.    Illinois's victim-centric approach to establishing force sweeps up reckless offense conduct.....................................17

        B.    Defendants who use force while intoxicated, which could otherwise make their conduct reckless, cannot use their intoxication as a defense to robbery. ...........................22

    III.    Circuit court precedent, both inside and outside this Court, supports the conclusion that robbery presents a categorical mismatch. ..........................................................................27

A.    The Seventh Circuit has yet to consider this issue when preserved and when presented with specific examples of overbroad Illinois robbery convictions. ...........................27

B.    Out-of-circuit precedent relies on the realistic probability test, which this case meets. ................................33

Conclusion .........................................................................................................35

Certificate of Compliance with Fed. R. App. P. 32(a)(7)(B).....................................36

# Table of Authorities

## Cases

*Borden v. United States,* 141 S. Ct. 1817 (2021) ............................. 1, 2, 5, 6, 8, 9, 10, 15, 17, 20, 26, 28, 34, 35

*Douglas v. United States*, 858 F.3d 1069 (7th Cir. 2017) ................................................. 8

*Elion v. United States*, 76 F.4th 620 (7th Cir. 2023) ....................................................... 7

*Goodwine v. State*, 764 P.2d 680 (Wyo. 1988) ................................................................ 15

*Klikno v. United States*, 928 F.3d 539 (7th Cir. 2019) .................................................... 12

*People v. Anderson*, 417 N.E.2d 663 (Ill. App. 1981) ..................................................... 13

*People v. Arndt*, 280 N.E.2d 230 (Ill. 1972) ................................................................... 23

*People v. Avant*, 532 N.E.2d 1141 (Ill. App. 1989) ......................................................... 13

*People v. Baker*, 391 N.E.2d 91 (Ill. App. 1979) ............................................................ 26

*People v. Bradford*, 397 N.E.2d 863 (Ill. App. 1979) ......................................... 18, 19, 20

*People v. Dennis*, 692 N.E.2d 325 (Ill. 1998) ................................................................. 14

*People v. Garland*, 627 N.E.2d 377 (Ill. App. 1993) ................................................ 13, 31

*People v. Grengler*, 617 N.E.2d 486 (Ill. App. 1993) ............................................... 19, 20

*People v. Hicks*, 29 N.E.3d 451 (Ill. App. 2015) ............................................................. 31

*People v. Hollingsworth*, 457 N.E.2d 1062 (Ill. App. 1983) ................................. 17, 18, 26

*People v. Jones*, 595 N.E.2d 1071 (Ill. 1992) ........................................................ 12, 24, 28

*People v. Lee*, 691 N.E.2d 117 (Ill. App. 1998) ............................................................. 13

*People v. Lengyel*, 38 N.E.3d 171 (Ill. App. 2015) ......................................................... 32

*People v. Lewis*, 673 N.E.2d 1105 (Ill. App. 1996) .................................................... 20, 21

*People v. Lovings*, 655 N.E.2d 1152 (Ill. App. 1995) ..................................................... 14

*People v. Olson*, 377 N.E.2d 371 (Ill. App. 1978) ........................................................... 23

*People v. Patton*, 389 N.E.2d 1174 (Ill. 1979) ................................................................ 13

*People v. Reese*, 102 N.E.3d 126 (Ill. 2017) .................................................................... 27

*People v. Rosas*, 429 N.E.2d 898 (Ill. App. 1981) ...................................................... 24, 25

*People v. Rutigliano*, 156 N.E.3d 122 (Ill. App. 2020) ................................................... 22

*People v. Simms*, 736 N.E.2d 1092 (Ill. 2000) ........................................................... 30, 31

*People v. Talley*, 531 N.E.2d 1139 (Ill. App. 1988) ........................................................ 13

*People v. Taylor*, 541 N.E.2d 677 (Ill. 1989) .................................................................. 13

*People v. Thomas*, 577 N.E.2d 831 (Ill. App. 1991) .................................................. 13, 31

*People v. Thompson*, 466 N.E.2d 380 (Ill. App. 1984) .............................................. 13, 26

*People v. White*, 365 N.E.2d 337 (Ill. 1977) ............................................................. 23, 24

*[Redacted] v. [Redacted]*, 2022 WL 4546737 (D.D.C. Aug. 29, 2022) ............................ 14

*Rehaif v. United States*, 139 S. Ct. 2191 (2019) ............................................................. 29

*Ruan v. United States*, 142 S. Ct. 2370 (2022) ............................................................... 29

*State v. Knight*, No. 2003-CA-14, 2004 WL 830043 (Ohio Ct. App. 2004) ................ 34

*Steward v. People*, 79 N.E. 636 (Ill. 1906) .................................................................... 14

*United States v. Bragg*, 44 F.4th 1067 (8th Cir. 2022) .............................................. 33, 34

*United States v. Brown*, 74 F.4th 527 (7th Cir. 2023) ......................................... 27, 28, 33

*United States v. Harrison*, 54 F.4th 884 (6th Cir. 2022)................................................... 8

*United States v. Love*, No. 22-2035, 2023 WL 2546507
    (7th Cir. Mar. 17, 2023) ........................................................................ 12, 28, 32, 33

*United States v. Smith*, 921 F.3d 708 (7th Cir. 2019)........................................................ 7

*United States v. Taylor*, 142 S. Ct. 2015 (2022) ........................................................... 7, 8

*United States v. White*, 58 F.4th 889 (6th Cir. 2023) ..................................................... 34

*Voisine v. United States*, 579 U.S. 686 (2016) ..................................................................9

## Statutes

18 U.S.C. § 3231 .....................................................................................................3

18 U.S.C. § 3559(c)(2)(F) ......................................................................................6, 8

18 U.S.C. § 3742 .....................................................................................................3

21 U.S.C. § 802(58) .................................................................................................8

21 U.S.C. § 841 ..........................................................................................5, 6, 8, 16

21 U.S.C. § 851 .............................................................................................5, 6, 35

28 U.S.C. § 1291 .....................................................................................................3

720 ILCS 5/18-1 ...................................................................................................11

720 ILCS 5/18-5 ...................................................................................................11

720 ILCS 5/4-3 .............................................................12, 13, 27, 30, 31, 32

720 ILCS 5/4-6 ...........................................................................................12, 32

720 ILCS 5/6-3 .....................................................................................................22

## Other Authorities

Fed. R. App. P. 4(b)(1)(A)(i) ...................................................................................3

U.S.S.G. § 4B1.1 .....................................................................................................5

U.S.S.G. § 4B1.2 ..................................................................................................5, 7

Wayne R. LaFave, Substantive Criminal Law ......................................................15

## Introduction and Summary of Argument

Not all force is equal when it comes to the categorical approach. The Supreme Court made that clear two years ago when it decided *Borden v. United States*. Whenever federal law uses an elements clause—"has as an element the use, attempted use, or threatened use of physical force against the person of another"—the force must be knowing or intentional. Reckless force is out.

The Supreme Court acknowledged that this interpretation of the elements clause sometimes leads to counterintuitive results. For example, a drunk driver convicted of involuntary manslaughter no doubt used force by hitting someone with their car. But that offense, though morally culpable and worthy of punishment, cannot serve as a federal predicate under the elements clause if it could have been committed recklessly.

Illinois robbery is like that manslaughter example. The Illinois General Assembly defined robbery with two elements—theft plus force—and made a legislative decision to incorporate recklessness as the minimum mens rea for the offense. The Illinois Supreme Court adopted that understanding, and lower courts accordingly took an expansive view of robbery's force element. The legal consequence of this legislative choice to make recklessness the threshold for robbery is most evident in two subsets of cases: *first,* robberies where the defendant's force is inadvertent but nevertheless suffices because Illinois courts

assess force from the standpoint of the victim; and *second,* robberies committed while intoxicated.

These subsets, to be sure, represent the outer limits of what robbery criminalizes in Illinois. More often than not, robbery entails knowing or intentional force—the offense's heartland is still the criminal who holds up a cashier with a weapon and steals money from the register. But these subsets are critical when it comes to federal criminal proceedings that must resort to the categorical approach and analyze the least culpable means of committing the predicate offense. As *Borden* acknowledged, the outer limits are what make the categorical approach counterintuitive at times.

Jonathan Smith's 2008 aggravated robbery conviction requires this sort of categorical analysis. After the district court deferred on the issue, this Court can now analyze *Borden*'s impact on Illinois robbery with the benefit of specific state-law examples premised on reckless force—cases based on victim-centric force and intoxicated force.

Again, Illinois made a policy decision to take an expansive view of robbery's force element by incorporating recklessness into the offense. That decision has federal sentencing consequences today: Smith's aggravated robbery conviction cannot serve as a crime of violence or serious violent felony predicate under the elements clause.

## Jurisdictional Statement[1]

The United States District Court for the Central District of Illinois had jurisdiction under 18 U.S.C. § 3231. A grand jury sitting in that district charged Jonathan Smith by indictment with one count of delivering 5 grams or more of methamphetamine (actual) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). R. 1. The district court sentenced Smith on January 31, 2023, and entered a final judgment two days later on February 2. A1 (R. 44).

Smith filed a timely notice of appeal on February 13, 2023. R. 47; Fed. R. App. P. 4(b)(1)(A)(i). This Court has jurisdiction pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742.

---

[1] This brief uses the following abbreviations: record on appeal: "R.__ at __;" appendix: "A__." For the Court's convenience, record citations hyperlink directly to the corresponding docket entry.

**Issue Presented for Review**

Whether a 2008 Illinois aggravated robbery conviction presents a categorical mismatch with the federal elements clause when the offense could be committed with reckless force.

## Statement of the Case

In September 2019, the government filed a one-count indictment against Jonathan Smith alleging he had distributed 5 or more grams of methamphetamine (actual) in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(B). R. 1. The indictment also included a special finding under 21 U.S.C. § 851 alleging that Smith's 2008 conviction for aggravated robbery qualified as a serious violent felony. The government later memorialized this special finding in a separate § 851 filing that informed Smith he faced an increased mandatory minimum of 10 years for his alleged § 841 offense. R. 27.

Three years later in August 2022, Smith pleaded guilty. Probation calculated a Guidelines range of 262 to 327 months based on an offense level of 34 and a criminal history category of VI. This range was premised in large part on a career-offender designation that accounted for 13 of the 34 offense level points and bumped his criminal history score from IV to VI. R. 34 at 7–8, 12 (revised PSR); U.S.S.G. § 4B1.1.

Smith objected to this enhancement, maintaining that his 2006 vehicular hijacking and 2008 aggravated robbery convictions did not qualify as crimes of violence under the elements clause in U.S.S.G. § 4B1.2(a)(1). R. 41 (defendant sentencing memo). He contended that both offenses could be committed recklessly so neither satisfied the elements clause after *Borden v. United States*,

141 S. Ct. 1817 (2021). He also moved to dismiss the government's § 851 information because the serious violent felony designation in 21 U.S.C. § 841 — the trigger for the 10-year mandatory minimum — was premised on the same elements clause language. See 18 U.S.C. § 3559(c)(2)(F)(ii). So, according to Smith, his aggravated robbery conviction was not a serious violent felony either.

The government, for its part, insisted that Smith's two state convictions satisfied the elements clause and referenced Illinois's pattern jury instructions for support. R. 40 at 6–8 (government sentencing memo). The district court sided with the government without addressing the issue head-on. Although Smith "raise[d] exceptionally strong arguments," the district court deferred to the Seventh Circuit "to reconsider this issue in light of *Borden*." R. 52 at 11.

Moving to the sentence itself, the district court acknowledged the steep cost of these enhancements and the disparity between meth actual versus meth mixture. *Id.* at 18, 23. Without that overlay, Smith would otherwise face a range of 30 to 37 months. *Id.* at 23. And even setting aside the meth disparity policy argument, the lack of an aggravated robbery predicate alone would decrease the Guidelines range by almost 30 percent (188 to 235 months) and cut the mandatory minimum in half to 5 years. *Id.* The district court fully considered the § 3553 factors and ultimately imposed a sentence of 120 months. *Id.* at 28.

Smith now appeals.

## Argument

**I.  There is a categorical mismatch between the Supreme Court's narrow interpretation of the elements clause and Illinois's expansive interpretation of its robbery statute.**

This Court reviews the application of the categorical approach at

sentencing without any deference to the district court. See *Elion v. United States*,

76 F.4th 620, 626 (7th Cir. 2023).

The categorical approach is well-trodden territory: it is "essentially a

matching exercise." *Id.* at 625. This Court must compare the least culpable means

of committing the predicate offense, without looking at the defendant's conduct,

against the sentencing enhancement provision. If the offense elements "are the

same as, or narrower than" the elements listed in the federal provision, then "the

crime of conviction qualifies as a predicate offense.'" *United States v. Smith*, 921

F.3d 708, 712 (7th Cir. 2019).

The government contends that Illinois robbery qualifies as a crime of

violence under the Guidelines' elements clause. See U.S.S.G. § 4B1.2(a)(1). This

means that the government must demonstrate that Illinois robbery "always

requires the [state prosecution] to prove—beyond a reasonable doubt, as an

element of its case—the use, attempted use, or threatened use of force." *United

States v. Taylor*, 142 S. Ct. 2015, 2020 (2022). This same analysis also resolves

whether Illinois robbery qualifies as a serious violent felony under 18 U.S.C.

§ 841, as this term, too, rests on an identically worded elements clause. See

21 U.S.C. § 802(58); 18 U.S.C. § 3559(c)(2)(F); see also *Douglas v. United States*, 858 F.3d 1069, 1071 (7th Cir. 2017) (analyzing a "trio of elements clauses" with the same categorical approach analysis); *United States v. Harrison*, 54 F.4th 884, 888 (6th Cir. 2022) (analyzing the elements clause as it relates to a serious violent felony).

In short, this appeal requires the Court to determine whether the least culpable means of committing Illinois robbery falls within the elements clause.

### A.    *Borden* held that the elements clause only encompasses the defendant's "consciously directed" force.

Start the matching exercise with the boundaries of the elements clause. Two years ago, the Supreme Court decided *Borden v. United States* and narrowed those bounds. The Court analyzed which of the four criminal mental states Congress intends to cover when it passes a criminal statute using an elements clause: "has as an element the use, attempted use, or threatened use of physical force against the person of another."[2] *Borden*, 141 S. Ct. at 1823. The answer was straightforward: any predicate offense that can be committed with reckless force, as opposed to knowing or intentional force, falls outside the elements clause. See *id.* at 1821–22. But that holding, though simple enough to understand at a surface

---

[2] Although *Borden* dealt with the elements clause as codified in the Armed Career Criminal Act, its rationale applies with equal force to other provisions using the same elements clause language. See, *e.g.*, *Taylor*, 142 S. Ct. at 2020 ("This Court has long understood similarly worded statutes to demand similarly categorical inquiries.").

level, requires closer examination to understand why ostensibly qualifying state convictions—offenses like homicide and robbery that intuitively involve violence—sometimes criminalize conduct beyond what Congress intended to reach with the text it chose.

At the outset, everyone on the Court agreed on the actus reus that Congress sought to capture: volitional force. Prior Supreme Court precedent left no room for doubt on that front. See *id.* at 1825 (explaining the "use of physical force" means "the 'volitional' or 'active' employment of force" (quoting *Voisine v. United States*, 579 U.S. 686, 693–94 (2016))). But the requirement of volitional force still did not answer what Congress meant when it used the phrase "against another" in an elements clause.

That phrase, according to the plurality, resolved the mens rea issue.[3] After canvassing competing definitions of "against another" and pinpointing the language it modifies ("use of physical force"), the plurality opinion explained that "the pairing of volitional action with the word 'against' supports that word's oppositional, or *targeted*, definition." *Id.* at 1826 (emphasis added). This meant that the elements clause's plain meaning only encompasses conduct that is "consciously directed" at the target. *Id.* So a defendant who uses or threatens

---

[3] Justice Thomas's concurrence reached the same result based solely on the phrase "use of physical force." *Borden*, 141 S. Ct. at 1835.

volitional force must have a mens rea of at least knowledge or intent for his conduct to fall within the elements clause.

The plurality bolstered this conclusion by outlining what Congress's wording excluded. By using the phrase "against the person of another," Congress distinguished between "a deliberate choice of wreaking harm on another" versus "mere indifference to risk." *Id.* at 1830. The choice to exclude the latter meant that "crimes of recklessness, though morally culpable, do not fit" within the elements clause. *Id.* (cleaned up). The plurality illustrated these principles with a handful of examples premised on disqualifying reckless force:

- Drunk driving and accidents resulting from text messaging;
- A thief jumping off a balcony while fleeing and landing on someone;
- A skier flying down a hill and careening into another skier; and
- A father injuring his daughter in a go-kart crash without safety equipment.

See *id.* at 1831. In sum, the mere fact that "defendants hurt other people, some seriously, along the way" does not mean that the offense falls within the elements clause. *Id.* The categorical analysis requires more nuance.

With this guidance in hand, lower courts had their marching orders. Because recklessness involves acting with disregard to a substantial and unjustifiable risk—as opposed to knowledge of the risk or an intent to achieve it—any offense premised on reckless force cannot qualify as a predicate under the elements clause.

**B.   Illinois courts have heeded the General Assembly's command that recklessness attaches to robbery and expansively defined the offense's outer bounds.**

Illinois's Criminal Code supplies the starting point for the second half of the categorical matching exercise. In 2008, Illinois's definition of robbery did not contain any mental state requirement: "A person commits robbery when he or she takes property [except for certain vehicle offenses] from the person or presence of another by the use of force or by threatening the imminent use of force." 720 ILCS 5/18-1 (2008).[4]

Both aggravated robbery and armed robbery map on to this main robbery offense. A9–17.[5] Aggravated robbery, previously codified under 720 ILCS 5/18-5 in 2008 but now moved to 5/18-1(b), adds the element of communicating to the victim that the offender is armed, regardless of whether that is true. A16–17 (instructions 14.19–20). Armed robbery, in contrast, turns on whether the defendant actually possessed a weapon, regardless of whether the victim knew about it. A13–14 (instructions 14.05–06).

For categorical approach purposes, however, all three forms of robbery hinge on the same statutory language. The "use of force or by threatening the

---

[4] Beginning in 2013, Illinois added "knowingly" to robbery's definition: "A person commits robbery when he or she knowingly takes property…." 720 ILCS 5/18-1.
[5] The appendix features Illinois's historical pattern jury instructions that were in operation in 2008, which includes the statutory definitions in effect at that time. The Illinois Supreme Court library provided the scan on request.

imminent use of force" element in the traditional robbery statute is the lynchpin. See *Klikno v. United States*, 928 F.3d 539, 544 (7th Cir. 2019) (analyzing traditional robbery when the alleged predicate was armed robbery); see also *United States v. Love*, No. 22-2035, 2023 WL 2546507, at *3 (7th Cir. Mar. 17, 2023) (same).

The Illinois General Assembly provided clear instructions for courts to follow when interpreting criminal statues, like robbery, that lack a mens rea. "If the statute does not prescribe a particular mental state applicable to an element of an offense (other than an offense which involves absolute liability), any mental state defined in Sections 4-4 [intent], 4-5 [knowledge] or 4-6 [recklessness] is applicable." 720 ILCS 5/4-3(b); see also 720 ILCS 5/4-6 (following the Model Penal Code for the definition of recklessness).

 Illinois courts have heeded this default provision time and again. "[E]ither intent, knowledge or recklessness is an element of robbery even though the statutory definition of robbery does not expressly set forth a mental state." *People v. Jones*, 595 N.E.2d 1071, 1075 (Ill. 1992). Any legal confusion over the applicable legal standard was settled in 1979 when the Illinois Supreme Court decided *People v. Banks* and held that "robbery does not require specific intent."

388 N.E.2d 1244, 1248 (Ill. 1979). The General Assembly's instructions were crystal clear.[6]

To the extent that Illinois courts have grappled with robbery's contours in the decades since *Banks*, that uncertainty has instead arisen in the context of the dividing line between theft and robbery, not the minimum mens rea. Put differently, the state's robbery jurisprudence reveals courts grappling with the amount of force necessary to transform theft into robbery. Consider, for example, the state supreme court's own struggle with this distinction. Compare *People v. Taylor*, 541 N.E.2d 677, 680 (Ill. 1989) (premising force on the fact that the victim's "necklace was attached to her person in such a way that it offered resistance to anyone who would take it without permission"), with *People v. Patton*, 389 N.E.2d 1174, 1175 (Ill. 1979) (finding insufficient force in a "'snatching' of a purse from the fingertips" of a victim that "thr[ew] her arm back").

To be sure, this dividing line between theft and robbery has always been a gray (and perhaps inconsistent) one. And the difficulty of demarcating that line is why some states have updated their criminal codes to clarify the limits of their

---

[6] This principle of recklessness applying to robbery because of 720 ILCS 5/4-3(b) is *littered* throughout Illinois case law. See, *e.g.*, *People v. Lee*, 691 N.E.2d 117, 121 (Ill. App. 1998); *People v. Garland*, 627 N.E.2d 377, 382 (Ill. App. 1993); *People v. Thomas*, 577 N.E.2d 831, 835 (Ill. App. 1991); *People v. Avant*, 532 N.E.2d 1141, 1145 (Ill. App. 1989); *People v. Talley*, 531 N.E.2d 1139, 1140 (Ill. App. 1988); *People v. Thompson*, 466 N.E.2d 380, 385 (Ill. App. 1984); *People v. Anderson*, 417 N.E.2d 663, 668 (Ill. App. 1981). And obviously any Westlaw search fails to capture the countless unpublished Illinois trial court decisions relying on the same principle.

robbery statutes. See *[Redacted] v. [Redacted]*, 2022 WL 4546737, at *11–15 (D.D.C. Aug. 29, 2022) (surveying all 50 states).

But grayness aside, what matters for categorical matching purposes is that Illinois courts frequently define the dividing line in a manner that sweeps borderline cases into robbery rather than theft. Said another way, Illinois courts construe robbery's outer bounds quite broadly.

This broad conception stems from the doctrinal tendency to assess robbery's force element from the standpoint of the victim, rather than the offender. In Illinois, a threat of force exists "if the fear of the alleged victim was of such a nature as in reason and common experience is likely to induce a person to part with property against his will." *People v. Lovings*, 655 N.E.2d 1152, 1155 (Ill. App. 1995) (original quote tracing to *Steward v. People*, 79 N.E. 636, 639 (Ill. 1906)).[7] This victim-centric assessment means that the offender's *knowing* conduct does not always matter; instead, inadvertent—or *reckless*—conduct can suffice so long as it sparks the fear of the victim. See, *e.g.*, *People v. Dennis*, 692 N.E.2d 325, 333 (Ill. 1998) ("Generally, where a victim observes a weapon, a sufficient threat

---

[7] This victim-centric conception may well be due to the state's original definition of robbery as theft plus force *or intimidation*. See *Steward*, 79 N.E. at 643 ("Our statute defines robbery to be 'the felonious and violent taking of money, goods, or other valuable thing, from the person of another by force or intimidation.'").

of force exists."). Again, the crucial doctrinal nuance is that Illinois's distinction between robbery and theft often hinges on the victim.

The upshot of this victim-centric conception is that Illinois has made a policy decision to expansively define robbery's outer bounds, particularly when it comes to force. Other states, in contrast, have chosen a more restrained view of the offense. See, *e.g.*, *Goodwine v. State*, 764 P.2d 680, 682–83 (Wyo. 1988) (explaining that if the "focus were on the victim's reaction to an accused's conduct, we would run the risk that a victim's subjective overreaction to benign conduct would unjustifiably escalate an offense" from theft to robbery); see also Wayne R. LaFave, Substantive Criminal Law § 20.3(d) (3d ed. 2021) (discussing different state approaches to robbery's force element). As shown next in Part II, Illinois's expansive view of robbery prompts courts to affirm convictions when the defendant uses or threatens force recklessly—convictions, no doubt, that the Illinois General Assembly expressly authorized by incorporating a reckless mens rea as the baseline in its robbery statute.

*Borden* teaches that this policy choice has federal sentencing consequences today. By charging and prosecuting robberies based on reckless force, prior to 2013, Illinois robbery criminalized conduct beyond what the federal elements clause encompasses. This means that Smith's 2008 aggravated robbery conviction falls outside the elements clause. The conviction cannot serve as a predicate for a

career-offender enhancement or a mandatory minimum under 21 U.S.C. § 841(b)(1).

## II. Illinois courts routinely uphold robbery convictions premised on reckless force.

The following two Sections illustrate Illinois robbery's outer bounds and how the state premises robbery convictions on reckless force. Section A marks out these limits by walking through cases where the state's victim-centric approach to force undergirds the robbery conviction. Notice how courts affirm these convictions when the defendant either had no awareness of his or her threatened force or inadvertently made physical contact—conduct that indicates recklessness, not knowledge.

Section B offers a different subset of cases that further prove the categorical mismatch—robberies committed while intoxicated. Historically, Illinois permitted defendants to raise a voluntary intoxication defense to specific intent offenses, which excused reckless offense conduct, based on the theory that intoxication deprived them of knowledge. This defense was permissible for robberies until 1979 when the Illinois Supreme Court held that robbery was a general intent crime that encompassed recklessness, so voluntary intoxication's excuse of knowledge no longer mattered to robbery. In response, the state continued prosecuting intoxicated robberies, despite the offense conduct potentially being reckless.

At bottom, both Sections demonstrate how the least culpable means of committing robbery in Illinois makes the offense a categorical mismatch with the elements clause. The cases below are akin to the Supreme Court's list of examples that involve some level of force but do not necessarily entail knowing force. See *Borden*, 141 S. Ct. at 1835.

### A. Illinois's victim-centric approach to establishing force sweeps up reckless offense conduct.

Illinois's victim-centric approach to force is most apparent when it comes to threats of force. The first two cases below demonstrate how broadly this doctrinal approach reaches because the victim's perception, not the defendant's knowing conduct, sustains the conviction. The third case below further shows the categorical mismatch in an actual force robbery, where the victim initiates physical contact that the defendant attempts to avoid. All three cases ultimately illustrate the state's policy of expansively defining robbery's limits.

*First*, consider the inadvertent nature of the threatened force in *People v. Hollingsworth*, 457 N.E.2d 1062 (Ill. App. 1983). The defendant in that case met with a school principal when there was about $225 on the desk. *Id.* at 1063. A few minutes into the meeting, the defendant reached over the desk, stole the money, and fled. The principal "testified that when the defendant moved toward the desk, she observed the handle of a gun tucked in the front of the defendant's jeans." *Id.* As the victim, the principal "did not attempt to stop the defendant,

because she was afraid of the weapon." *Id.* She also feared the defendant "was

spaced out on some dope or something." *Id.* The police never found a weapon.

And once arrested, the defendant told police that she was never armed during

the theft.

The court upheld the robbery conviction. Although "the defendant did not

speak or otherwise communicate to [the victim]," the principal's "impression

that the defendant was armed" satisfied the force element. *Id.* at 1064. It made no

difference that there was no evidence of the defendant ever articulating a threat

through her words or actions. Instead, the court reasoned that "once [a

weapon's] presence is indicated to the victim, nothing more need be

communicated." *Id.* at 1065.

Implicit in this victim-centric reasoning is the premise that the threat of

force can be conveyed recklessly—such as inadvertently displaying an object that

the victim could construe as a weapon. No evidence in *Hollingsworth* suggests

that the defendant knowingly conveyed a threat or flashed a gun. At most the

threat was reckless: the defendant disregarded a substantial and unjustifiable

risk by keeping an object in her waistband that a victim could construe as a gun.

*Second*, examine the dividing line between theft and robbery in *People v.

Bradford*, 397 N.E.2d 863 (Ill. App. 1979). The defendants walked up to a grocery

store cashier and presented a note instructing, "Put all the money in the cash

drawer in a bag." *Id.* at 865. The cashier looked up after reading the note, at which point "one of the defendants moved his entire right hand into a camera bag which hung from his shoulder." *Id.* at 867. The cashier then complied with the note's demand. Later at trial, the cashier "testified that neither of the two men who approached her service desk threatened her nor did she notice that either one of them had any guns." *Id.* at 865.

This fact pattern presented a borderline case of theft versus robbery. Without any physical movement, Illinois courts would treat this offense conduct as theft: "Merely instructing a victim to hand over money or property, in the absence of any action which would reasonably induce the victim to believe that the perpetrator was armed or otherwise threatening force, does not amount to a robbery." *People v. Grengler*, 617 N.E.2d 486, 491 (Ill. App. 1993).

*Bradford*, though, fell on the robbery side of the dividing line because the defendant placed his hand inside a bag. The court reasoned that it had "no doubt that such a movement under such circumstances constituted a 'threatening of the imminent use of force' of such a nature likely to induce the cashier to part with the money against her will." *Bradford*, 937 N.E.2d at 866.

Yet there was no evidence that the defendant's hand movement was knowing or intentional, let alone that he knew it to be a threat. For example, the defendant did not say anything that could provide additional context to support

the inference that he was reaching for a hidden weapon. See *Grengler*, 617 N.E.2d at 491 ("Defendant's reference to 'a .25 special' distinguishes this occurrence from a case in which there were no acts or statements by a defendant, other than having a hand in a pocket, which support the inference that the defendant was armed."). The court instead concluded that simply placing one's hand inside a bag during a theft, whether deliberate or not, could be construed by the victim as a "menacing gesture" that satisfied robbery's force requirement. *Bradford*, 937 N.E.2d at 867. Put another way, an inadvertent gesture alone—so long as the gesture could warrant a reasonable victim to infer that the defendant was armed—turns theft into robbery. That legal standard for force is far broader than force that is "consciously directed" at the victim. *Borden*, 141 S. Ct. at 1826.

*Third*, notice how this victim-centric approach can apply to robberies premised on actual force as well. See *People v. Lewis*, 673 N.E.2d 1105 (Ill. App. 1996). The offense in *Lewis* took place in a neighborhood convenience store. As the victim was checking out, the cashier placed a few dollars change on the counter. The defendant then reached around the victim to steal the change and tried to flee. In response, the victim reached for the defendant's hand, and as the defendant "broke away, [the victim] grabbed his coat and pushed him." *Id.* at 1106. This prompted the defendant to "stoop[] down, causing [the victim] to fall over him." *Id.*

The *Lewis* majority concluded that this conduct satisfied robbery's force element. Although "a mere snatching" normally was theft, here, in contrast, "a struggle ensued and force occurred between the victim and the defendant." *Id.* at 1107. The fact that the victim—not the defendant—initiated physical contact was of no consequence to the majority. The dissent, conversely, latched on to this fact, explaining that "no force was assertively deployed by the defendant in his attempt to take the victim's property." *Id.* at 1109 (Gordon, J., dissenting). The defendant's "response was to pull away rather than to assertively push or restrain the victim." *Id.* The offense therefore did not qualify as a robbery in the dissent's view, only theft.

This disagreement between *Lewis*'s majority and dissent epitomizes how Illinois robbery sweeps up reckless force. Although the defendant did not intentionally or knowingly initiate physical contact when stealing the change, the majority could fairly conclude that the defendant recklessly made contact with the victim: he disregarded a substantial and unjustifiable risk that physical force would follow when the victim was standing between him and the money.

This case, too, accordingly demonstrates the expansive nature of Illinois's victim-centric doctrine. The victim's reaction to the offense conduct turned theft into robbery—further evidence that a defendant need not harbor knowledge or intent to satisfy robbery's force requirement.

## B. Defendants who use force while intoxicated, which could otherwise make their conduct reckless, cannot use their intoxication as a defense to robbery.

Beyond the case examples above, the relationship between Illinois's voluntary intoxication defense and robbery also demonstrates the state's commitment to prosecuting robberies premised on reckless conduct—and thus the categorical mismatch with the elements clause. Understanding the significance of this relationship requires an overview and chronology of the voluntary intoxication defense.

The Illinois Criminal Code historically provided defendants an affirmative defense to certain charges if they presented sufficient evidence of their voluntarily induced intoxicated state. From 1962 to 1988, this defense applied when the intoxication "[n]egatives the existence of a mental state which is an element of the offense." *People v. Rutigliano*, 156 N.E.3d 122, 139 (Ill. App. 2020) (detailing the legislative history). From 1988 to 2002, the General Assembly amended the defense to apply when intoxication "[i]s so extreme as to suspend the power of reason and render him incapable of forming a specific intent which is an element of the offense." *Id.* Then in 2002, the General Assembly altered the defense to only apply to involuntary intoxication. 720 ILCS 5/6-3. As a practical matter, though, what matters to this appeal's categorical analysis is what conduct

(*i.e.*, mens rea) the defense absolved, rather than what level and kind of intoxication triggered the defense.

In short, voluntary intoxication could make offense conduct reckless. If the defendant was charged with a crime requiring specific intent (knowledge or intent), the defense could be raised. But if the defendant was charged with a crime requiring general intent (recklessness or more), the defense had no bearing. See, *e.g.*, *People v. Arndt*, 280 N.E.2d 230, 233 (Ill. 1972) ("[V]oluntary intoxication is not a defense to the crime of involuntary manslaughter, since involuntary manslaughter is not a specific intent crime); *People v. Olson*, 377 N.E.2d 371, 377 (Ill. App. 1978) (citing *Arndt* and rejecting the voluntary intoxication defense when the "offense requires only that a defendant act recklessly, not intentionally"). Put simply, the defense could not negate recklessness, only knowledge and intent.

The issue of whether defendants could raise this defense when charged with robbery was a flashpoint in the 1970s and 80s. In 1977, the Illinois Supreme Court held that defendants were legally entitled to raise voluntary intoxication as an affirmative defense to robbery because, for a short stint of time, the court construed robbery as requiring specific intent. See *People v. White*, 365 N.E.2d 337, 342–43 (Ill. 1977). But just two years later, the same court backtracked on that

specific intent premise when it decided *People v. Banks* and overruled *White*.
*Banks*, 388 N.E.2d at 1248.

Recall that *Banks* eliminated any legal uncertainty over robbery's mens rea
requirement. *Banks* explained that when the General Assembly passed the
Criminal Code in 1961, "robbery was considered a general intent crime; and the
legislature intended no change." *Id.* As evidence of that backdrop, the court
flagged a few early 20th century decisions affirming intoxicated robberies, which
showed that robbery had always encompassed reckless conduct. *Id.* (citing cases
from 1931 and 1930 with the parenthetical "where intoxication was involved").
Ultimately, though, the General Assembly's intent was most apparent in the
Code itself, where the robbery statute did not "enumerate[] a requisite element of
specific intent." *Id.*

*Banks* therefore stood for the proposition that robbery is a crime of general
intent, meaning recklessness was the minimum mens rea—a proposition the
court reaffirmed in even starker language 13 years later. See *Jones*, 595 N.E.2d at
1075.

Fast forward two more years to 1981 when an Illinois appellate court
recognized the obvious implication of *Banks* on the voluntary intoxication
defense. See *People v. Rosas*, 429 N.E.2d 898 (Ill. App. 1981). Presented again with
the question from *White* of "whether a defendant can present his voluntary

intoxication as a defense to a charge of armed robbery," *Rosas* answered no. *Id.* at 899. The voluntary intoxication defense can only negate a defendant's specific intent, but robbery is a crime of general intent. Said more tangibly, even if the defendant committed a robbery when drunk, and thus recklessly, robbery still encompasses that offense conduct.

The *Rosas* decision, however, reached even further and rejected an important counterargument. The defendant contended that specific intent, at least as it relates to the intoxication defense, includes recklessness—a contention stemming from LaFave's treatise on criminal law. See *id.* at 900 (citing LaFave for the proposition that "if intoxication does in fact negative an intention (whether it be called specific intent or general intent), the crime has not been committed"). In response, the court explained that barring the voluntary intoxication defense for robberies premised on reckless conduct made good sense: it "avoid[ed] allowing a criminal to commit a crime with a revolver in one hand to commit the deed, and a quart of intoxicating liquor in the other hand with which to create his defense." *Id.* Illinois was charting its own course when it came to robbery and intoxication.

The practical import of these cases was unmistakable. Defendants charged with robbery could not raise a voluntary intoxication defense because robbery criminalizes reckless conduct and intoxication cannot negate that mental state.

Indeed, despite potentially reckless offense conduct, *Banks* immediately foreclosed the issue for intoxicated robbery defendants. See, *e.g.*, *Thompson*, 466 N.E.2d at 388 (agreeing with the trial court's conclusion that "the defense of voluntary intoxication was not available to a defendant charged with a general intent crime such as armed robbery"); *People v. Baker*, 391 N.E.2d 91, 94 (Ill. App. 1979) (explaining how "defense counsel conceded this issue in light of [*Banks*]"). *Hollingsworth*, the first case from Section A above, is a case in point. Although the defendant "was spaced out on some dope"—a state of mind that might have otherwise negated her specific intent—a voluntary intoxication defense would not have negated her recklessness. *Hollingsworth,* 457 N.E.2d at 1063.

The bottom line, then, is that a jury could convict a defendant for robbery in 2008 when the defendant was intoxicated precisely because robbery criminalizes reckless force. Yet this is the exact type of conduct that the Supreme Court warned does not qualify under the federal elements clause: conduct such as "drunk driving and other crimes of recklessness" that are nevertheless "morally culpable." *Borden*, 141 S. Ct. at 1830 (cleaned up). When read against this cautionary lesson from *Borden*, the relationship between Illinois's voluntary intoxication defense and general intent crimes like robbery further proves why Smith's state conviction is a categorical mismatch with the elements clause.

**III.   Circuit court precedent, both inside and outside this Court, supports the conclusion that robbery presents a categorical mismatch.**

    **A.   The Seventh Circuit has yet to consider this issue when preserved and when presented with specific examples of overbroad Illinois robbery convictions.**

This Court's recent decision in *United States v. Brown* held that a 2010 conviction for Illinois vehicular hijacking qualifies as a crime of violence under the federal elements clause. 74 F.4th 527, 530 (7th Cir. 2023). *Brown*, however, not only expressly reserved the robbery issue in this appeal, see *id.* at 531 n.4, but also premised its holding on the ways in which the two offenses differ.

*Brown* recognized that Illinois carjacking is "separate and distinct from robbery." *Id.* at 531. For one, unlike robbery, carjacking has no common-law analog. See *id.* For another, the Illinois General Assembly specifically excepted thefts of motor vehicles from the robbery statute and fashioned an "entirely new offense" for vehicular hijacking. *Id.* (quoting *People v. Reese*, 102 N.E.3d 126, 138 (Ill. 2017)).

Above all, the Court found it "difficult, if not impossible, to conceive of taking a motor vehicle" recklessly. *Id.* And defense counsel offered no examples or hypotheticals to the contrary. *Brown* therefore concluded that "[i]mplicit in the conduct proscribed by the [carjacking] statute is a mental state of at least knowing or purposeful action," notwithstanding the Criminal Code's default mens rea provision, 720 ILCS 5/4-3(b). *Id.* at 532.

As *Brown* understood, Illinois's treatment of robbery is night and day to carjacking. Perhaps most important, the Illinois Supreme Court has expressly applied the Criminal Code's default mens rea provision to the robbery statute and specified that recklessness attaches. See *Jones*, 595 N.E.2d at 1075; *Banks*, 388 N.E.2d at 1248. In addition, Illinois courts routinely uphold robbery convictions where the defendant's force must have been reckless, as illustrated above in Part II. These fundamental differences demonstrate why *Brown* appropriately held off on deciding whether robbery is a categorical mismatch with the elements clause.

Though unpublished, *United States v. Love*, 22-2035, 2023 WL 2546507 (7th Cir. Mar. 17, 2023), also warrants attention, as it is the only other post-*Borden* decision from this Court to consider whether pre-2013 Illinois robbery is overbroad. *Love* acknowledged the significance of the Criminal Code's default mens rea provision and the Illinois Supreme Court's related discussion of robbery encompassing recklessness in *Jones*. See *id.* at *3. But on plain error review, the Court deferred to the government's interpretation of Illinois's pattern jury instructions for robbery—the same argument that the government advanced before the district court in this case. R. 40 at 6. Because the instructions initially listed recklessness in the taking element but not the force element, the Court found "two competing views" of robbery's force element, so any error was not plain. *Love,* 2023 WL 2546507 at *4.

Robbery's pattern instructions in 2008 mirror the pattern instructions today. The robbery instructions, in their entirety, provided:

> To sustain the charge of robbery, the State must prove the following propositions:
>
> *First Proposition*: That the defendant [(intentionally) (knowingly) (recklessly)] took property from the person or presence of ____; and
>
> *Second Proposition*: That the defendant did so by the use of force or by threatening the imminent use of force.
>
> If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.
>
> If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty

A10 (instruction 14.02). Although the government's bifurcated interpretation of this pattern instruction was sufficient to withstand plain error review in *Love*, it is incorrect for three reasons.

*First*, the most natural reading of the instructions is that the mental state requirement applies uniformly across the offense. As a general matter, a mens rea provision "modifies not only the words directly following it, but also those other statutory terms that 'separate wrongful from innocent acts.'" *Ruan v. United States*, 142 S. Ct. 2370, 2377 (2022) (quoting *Rehaif v. United States*, 139 S. Ct. 2191, 2197 (2019)). Recklessness, then, should be read into both elements—it just so happens to be listed in the first proposition.

The Illinois Criminal Code, which the pattern instructions attempt to interpret, confirms this reading. Flip back to the pattern instruction immediately prior. Instruction 14.01 draws on the statutory definition for robbery: "A person commits the offense of robbery when he [(intentionally) (knowingly) (recklessly)] takes property from the person or the presence of another by the use of force or by threatening the imminent use of force." A9. Notice how the bracketed mental state requirement does not indicate any bifurcation among the elements; the pattern instruction simply inserts the mens rea into the beginning of the statutory definition. Remember, the General Assembly has provided directions on how to interpret a criminal statute like this: when the statute does not "distinguish[] among the elements thereof, the prescribed mental state applies to each such element." 720 ILCS 5/4-3(b). Recklessness applies throughout.

Illinois case law further cements this uniform interpretation. See *People v. Simms*, 736 N.E.2d 1092 (Ill. 2000). In *Simms* the Illinois Supreme Court described how the jury below "was instructed that a person commits the offense of armed robbery when he, while carrying on or about his person or while otherwise armed with a dangerous weapon, takes property from the person or presence of another by the use of force or by threatening the imminent use of force." *Id.* at 1115. *Simms* found this instruction permissible despite the trial judge not adding any mental state. "[P]roof that the prohibited harm was intended is not necessary

to proof of a general intent crime" like robbery, and the defendant's "mental state of intent, knowledge or recklessness could be inferred from the circumstances of the crime." *Id.* Critically, this conclusion would make little sense if robbery's taking and force elements somehow demanded different mens rea requirements. See also *People v. Hicks*, 29 N.E.3d 451, 456 (Ill. App. 2015) (jury asking for instructions on definition of force and no mental state given); *Garland*, 627 N.E.2d at 382 (rejecting a jury instruction challenge "since no specific mental state is an essential element of armed robbery, and a mental state of intent, knowledge, or recklessness is implied from the act itself"); *Thomas*, 577 N.E.2d at 836 (similar). A jury would need notice from the judge that each element necessitated a different mental state finding.

*Second*, even if one accepts the government's contention that robbery's elements are somehow bifurcated so that this Court can give independent meaning to the force element, the General Assembly's default mens rea provision refutes the government's position yet again. When offense conduct does not enumerate a particular mental state, "any mental state defined in Sections 4-4 [intent], 4-5 [knowledge] or 4-6 [recklessness] is applicable." 720 ILCS 5/4-3(b). And if that was not plain enough, in the very next sentence, the General Assembly flagged that knowledge should not be read into a statute without its express authorization: "Knowledge that certain conduct constitutes an offense …

is not an element of the offense unless the statute *clearly* defines it as such." 720 ILCS 5/4-3(c) (emphasis added).

The government in *Love* failed to premise its alternative interpretation on any authority that might otherwise undermine these clear-cut statutory directions. This Court should heed Illinois's legislative command.

*Third*, set aside the pattern instructions as written for a moment—the government's position makes little sense from a practical standpoint. If recklessness relates to either of the two elements, it makes far more sense when applied to the force element, rather than the taking element. Remember what recklessness entails: the conscious disregard of a substantial risk, where the disregard constitutes a gross deviation from a reasonable standard of care. See 720 ILCS 5/4-6. Illinois courts regularly grapple with the application of this definition when it comes to the force involved in homicide cases. See, *e.g.*, *People v. Lengyel*, 38 N.E.3d 171 (Ill. App. 2015) (concluding the defendant acted recklessly and thus had committed involuntary manslaughter, not second-degree murder, when he punched his father and killed him). Conversely, it is far more difficult to envision how robbery's theft element could be committed recklessly, rather than knowingly (unless the defendant was intoxicated). Stealing someone else's property would seemingly always involve a deliberate act to deprive the

victim of that object, whereas the force accompanying the theft may have been inadvertent.

In sum, *Love*'s jury instruction analysis, which was decided on plain error review, should not control the resolution of this appeal. *Brown* recognized as much by reserving this issue.

### B. Out-of-circuit precedent relies on the realistic probability test, which this case meets.

The only other circuit to address whether Illinois robbery satisfies the elements clause is the Eighth Circuit. See *United States v. Bragg*, 44 F.4th 1067 (8th Cir. 2022). This Court, however, should not look to *Bragg* as persuasive authority when the Eighth Circuit premised its decision on a concession from defense counsel. After accurately identifying the General Assembly's instructions that recklessness is the implicit mens rea for an offense like robbery, the court recounted how "counsel for Bragg admitted at oral argument that such a situation is hard to imagine." *Id.* at 1078. This helped the court conclude that it saw "no realistic probability that a person would be charged with and convicted of Illinois armed robbery based on merely reckless conduct." *Id.*

Given the extensive case discussion above in Part II, defense counsel's concession was misguided, and the Eighth Circuit's corresponding conclusion should not control this case. Recognize, too, that the *Bragg* appeal raised a host of issues, such that the question of whether Illinois robbery could be committed

recklessly was relatively minor in the defendant's appellate strategy. This is evident in the briefing, where defense counsel spent roughly four total pages across both briefs addressing whether Illinois robbery was a categorical match.

This Court, in contrast, now has myriad examples of Illinois courts condoning reckless force when affirming robbery convictions. That makes this case less like *Bragg* and more like *United States v. White*, 58 F.4th 889 (6th Cir. 2023).

In *White*, the Sixth Circuit held that Ohio aggravated robbery can be committed recklessly and therefore falls outside the elements clause. *Id.* at 899. Presented with an example of an Ohio state court affirming a robbery conviction based on a victim-centric threat of force, the Sixth Circuit highlighted how the victim in the state case "opened the cash-register drawer only 'because she had believed that [the defendant] possessed a gun.'" *Id.* at 898 (quoting *State v. Knight*, No. 2003-CA-14, 2004 WL 830043 (Ohio Ct. App. 2004)). That sole example, which presented offense conduct "that could clearly be the result of recklessness and not intent," satisfied the realistic probability test. *Id.* at 899. The district court had plainly erred in enhancing the defendant's sentence in light of *Borden*.

To the extent that this Court construes *Bragg* as persuasive authority, this appeal presents one of the rare instances where departing from a peer court is

warranted. Like robbery in Ohio, Illinois courts routinely affirm robbery convictions based on reckless force. *Borden* teaches that the elements clause does not reach those state convictions.

## Conclusion

The government premised Smith's career-offender enhancement and § 851 information on his 2008 Illinois aggravated robbery conviction. *Borden* clarified that this type of conviction, which criminalizes reckless force, no longer falls within the elements clause. Pre-2013 Illinois robbery convictions therefore cannot qualify as a crime of violence under the Guidelines or a serious violent felony for mandatory minimum purposes. To the extent that prior Seventh Circuit decisions hold that Illinois robbery, armed robbery, and aggravated robbery convictions satisfy the elements clause, *Borden* has abrogated that case law.

This Court should vacate Smith's sentence and remand for resentencing.

Respectfully submitted,
Thomas W. Patton
Federal Public Defender

s/  Elliot J. Louthen
Elliot J. Louthen
Assistant Federal Public Defender

Attorneys for Defendant-Appellant,
Jonathan Smith

**Certificate of Compliance with Fed. R. App. P. 32(a)(7)(B)**

The undersigned certifies that this brief complies with the volume limitations of Federal Rule of Appellate Procedure 32(a)(7)(B)(i) and Circuit Rule 32 in that it contains 7,721 words as shown by Microsoft Word 2016 used in preparing this brief.

s/ Elliot J. Louthen
Elliot J. Louthen
Assistant Federal Public Defender

Dated: September 22, 2023

No. 23-1272

---

United States Court of Appeals
for the Seventh Circuit

---

United States of America,
Plaintiff-Appellee,

vs.

Jonathan Smith,
Defendant-Appellant.

---

Appeal from the United States District Court
for the Central District of Illinois
Case No. 19-cr-30048
The Honorable Judge Sue E. Myerscough

---

Required short appendix of
Defendant-Appellant, Jonathan Smith

---

Federal Public Defender
Central District of Illinois
300 W. Main Street
Urbana, Illinois 61801
Telephone:   (217) 373-0666
Fax:             (217) 373-0667
Email: elliot_louthen@fd.org

Thomas W. Patton
Federal Public Defender

Elliot J. Louthen
Assistant Federal Public Defender

Attorneys for Defendant-Appellant,
Jonathan Smith

**Certificate of Compliance with Circuit Rule 30**

The undersigned counsel for Defendant-Appellant, hereby states that all of the materials required by Circuit Rule 30(a) and 30(b) are included in the Appendix to this brief.

s/ Elliot J. Louthen
Elliot J. Louthen
Assistant Federal Public Defender

Date:  September 22, 2023

## Appendix Table of Contents

Page

Certification ......................................................................................................... ii

Judgment in a Criminal Case ........................................................................... 1

Illinois Pattern Jury Instructions (4th ed. 2008) ......................................... 7

E-FILED
Thursday, 02 February, 2023  04:48:32 PM
Clerk, U.S. District Court, ILCD

AO 245B (Rev. 09/17)   Judgment in a Criminal Case
Sheet 1

# UNITED STATES DISTRICT COURT

Central District of Illinois

| | |
|---|---|
| UNITED STATES OF AMERICA<br>v.<br><br>JONATHAN SMITH | **JUDGMENT IN A CRIMINAL CASE**<br><br>Case Number:  19-30048-001<br>USM Number:  22866-026<br><br>Rosana E. Brown<br>Defendant's Attorney |

## THE DEFENDANT:

☑ pleaded guilty to count(s)    1

☐ pleaded nolo contendere to count(s)
which was accepted by the court.

☐ was found guilty on count(s)
after a plea of not guilty.

The defendant is adjudicated guilty of these offenses:

| Title & Section | Nature of Offense | Offense Ended | Count |
|---|---|---|---|
| 21 USC § 841(a)(1), 21 USC § 841(b)(1)(B), and 21 USC § 851 | Distribution of 5 Grams or More of Actual Methamphetamine | 3/13/2019 | 1 |

The defendant is sentenced as provided in pages 2 through    6    of this judgment. The sentence is imposed pursuant to the Sentencing Reform Act of 1984.

☐ The defendant has been found not guilty on count(s)

☐ Count(s) _____ ☐ is   ☐ are dismissed on the motion of the United States.

It is ordered that the defendant must notify the United States attorney for this district within 30 days of any change of name, residence, or mailing address until all fines, restitution, costs, and special assessments imposed by this judgment are fully paid. If ordered to pay restitution, the defendant must notify the court and United States attorney of material changes in economic circumstances.

FILED

FEB 0 2 2023

CLERK OF THE COURT
U.S. DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS

1/31/2023
Date of Imposition of Judgment

s/ Sue E. Myerscough

Signature of Judge

SUE E. MYERSCOUGH, U.S. District Judge
Name and Title of Judge

2/02/23
Date

DEFENDANT: JONATHAN SMITH
CASE NUMBER: 19-30048-001

## IMPRISONMENT

The defendant is hereby committed to the custody of the Federal Bureau of Prisons to be imprisoned for a total term of:

120 months on Count 1.

☑ The court makes the following recommendations to the Bureau of Prisons:

1. That the defendant serve his sentence in a facility that will allow him to participate in the Residential Drug Abuse Program (RDAP), as well as mental health treatment; and
2. That the defendant serve his sentence in a facility as close to his family in Springfield, Illinois, as possible.

☑ The defendant is remanded to the custody of the United States Marshal.

☐ The defendant shall surrender to the United States Marshal for this district:

☐ at ______________ ☐ a.m. ☐ p.m. on ______________ .

☐ as notified by the United States Marshal.

☐ The defendant shall surrender for service of sentence at the institution designated by the Bureau of Prisons:

☐ before 2 p.m. on ______________ .

☐ as notified by the United States Marshal.

☐ as notified by the Probation or Pretrial Services Office.

## RETURN

I have executed this judgment as follows:

Defendant delivered on ______________ to ______________

at ______________ , with a certified copy of this judgment.

______________
UNITED STATES MARSHAL

By ______________
DEPUTY UNITED STATES MARSHAL

AO 245B (Rev. 09/17)  Judgment in a Criminal Case
                      Sheet 3 — Supervised Release

Judgment—Page  3  of  6

DEFENDANT:  JONATHAN SMITH
CASE NUMBER:  19-30048-001

## SUPERVISED RELEASE

Upon release from imprisonment, you will be on supervised release for a term of :

   8 years on Count 1.

1.  You must not commit another federal, state or local crime.

2.  You must not unlawfully possess a controlled substance.

3.  You must refrain from any unlawful use of a controlled substance. You must submit to one drug test within 15 days of release from imprisonment and at least two periodic drug tests thereafter, as determined by the court.

   ☐ The above drug testing condition is suspended, based on the court's determination that you
      pose a low risk of future substance abuse. *(check if applicable)*

4.  ☐ You must make restitution in accordance with 18 U.S.C. §§ 3663 and 3663A or any other statute authorizing a sentence of restitution. *(check if applicable)*

5.  ☑ You must cooperate in the collection of DNA as directed by the probation officer. *(check if applicable)*

6.  ☐ You must comply with the requirements of the Sex Offender Registration and Notification Act (34 U.S.C. § 20901, *et seq.*) as directed by the probation officer, the Bureau of Prisons, or any state sex offender registration agency in the location where you reside, work, are a student, or were convicted of a qualifying offense. *(check if applicable)*

7.  ☐ You must participate in an approved program for domestic violence. *(check if applicable)*

   If this judgment imposes a fine or restitution, it is a condition of supervised release that the defendant pay in accordance with the Schedule of Payments sheet of this judgment.

   The defendant must comply with the following conditions:

1. The defendant shall not knowingly leave the federal judicial district in which he is approved to reside without the permission of the Court.

2. The defendant shall report to the probation office in the district to which he is released within 72 hours of his release from custody. He shall report to the probation officer in a reasonable manner and frequency as directed by the Court or probation officer.

3. The defendant shall follow the instructions of the probation officer as they relate to his conditions of supervision. He shall answer truthfully the questions of the probation officer as they relate to his conditions of supervision, subject to his right against self-incrimination.

4. The defendant shall notify the probation officer at least ten days prior to, or as soon as he knows about, any changes in residence or any time he leaves a job or accepts a job.

5. The defendant shall permit a probation officer to visit him at home between the hours of 6 a.m. and 11 p.m., at his place of employment while he is working, or at the locations of his court-ordered treatment providers. Visits may be conducted at any time if the probation officer has reasonable suspicion to believe that he is in violation of a condition of supervised release or if he or a third party has reported that he is unable to comply with a directive of the probation officer because of illness or emergency. During any such visit, he shall permit confiscation of any contraband observed in plain view of the probation officer.

A3

AO 245B (Rev. 09/17)  Judgment in a Criminal Case
Sheet 3A — Supervised Release

Judgment—Page  4  of  6

DEFENDANT:  JONATHAN SMITH
CASE NUMBER:  19-30048-001

## ADDITIONAL SUPERVISED RELEASE TERMS

6.  The defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.  This condition does not prevent him from invoking his Fifth Amendment right against self-incrimination.

7.  The defendant shall not knowingly be present at places where he knows controlled substances are illegally sold, used, distributed, or administered.

8.  The defendant shall not knowingly meet, communicate, or otherwise interact with any person whom he knows to be a convicted felon or to be engaged in, or planning to engage in, criminal activity, unless granted permission to do so by the Court.

9.  The defendant shall not knowingly possess a firearm, ammunition, or destructive device as defined in 18 U.S.C. § 921(a)(4), or any object that he intends to use as a dangerous weapon as defined in 18 U.S.C. § 930(g)(2).

10.  You shall participate in psychiatric services and/or a program of mental health counseling/treatment as directed by the U.S. Probation Office and shall take any and all prescribed medications as directed by the treatment providers. You shall pay for these services, to the extent you are financially able to pay.The U.S. Probation Office shall determine your ability to pay and any schedule for payment, subject to the Court's review upon request. You shall not be deemed financially able to pay if, at the time you begin receiving psychiatric services or mental health counseling or treatment, you would qualify for Court-appointed counsel under the Criminal Justice Act.

**U.S. Probation Office Use Only** A U.S. probation officer has instructed me on the conditions specified by the court and has provided me with a written copy of this judgment containing these conditions. For further information regarding these conditions, see *Overview of Probation and Supervised Release Conditions*, available at: www.uscourts.gov.

Defendant's Signature _____  Date _____

A4

AO 245B (Rev. 09/17)  Judgment in a Criminal Case
Sheet 5 — Criminal Monetary Penalties

DEFENDANT:  JONATHAN SMITH
CASE NUMBER: 19-30048-001

## CRIMINAL MONETARY PENALTIES

The defendant must pay the total criminal monetary penalties under the schedule of payments on Sheet 6.

|  | **Assessment** | **JVTA Assessment*** | **Fine** | **Restitution** |
|---|---|---|---|---|
| **TOTALS** | $ 100.00 | $ 0.00 | $ 0.00 | $ 0.00 |

☐ The determination of restitution is deferred until _____ . An *Amended Judgment in a Criminal Case (AO 245C)* will be entered after such determination.

☐ The defendant must make restitution (including community restitution) to the following payees in the amount listed below.

If the defendant makes a partial payment, each payee shall receive an approximately proportioned payment, unless specified otherwise in the priority order or percentage payment column below.  However, pursuant to 18 U.S.C. § 3664(i), all nonfederal victims must be paid before the United States is paid.

| **Name of Payee** | **Total Loss**** | **Restitution Ordered** | **Priority or Percentage** |
|---|---|---|---|
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
|  |  |  |  |
| **TOTALS** | $ 0.00 | $ 0.00 |  |

☐ Restitution amount ordered pursuant to plea agreement  $ _____

☐ The defendant must pay interest on restitution and a fine of more than $2,500, unless the restitution or fine is paid in full before the fifteenth day after the date of the judgment, pursuant to 18 U.S.C. § 3612(f).  All of the payment options on Sheet 6 may be subject to penalties for delinquency and default, pursuant to 18 U.S.C. § 3612(g).

☐ The court determined that the defendant does not have the ability to pay interest and it is ordered that:

☐ the interest requirement is waived for the  ☐ fine  ☐ restitution.

☐ the interest requirement for the  ☐ fine  ☐ restitution is modified as follows:

* Justice for Victims of Trafficking Act of 2015, Pub. L. No. 114-22.
** Findings for the total amount of losses are required under Chapters 109A, 110, 110A, and 113A of Title 18 for offenses committed on or after September 13, 1994, but before April 23, 1996.

DEFENDANT:   JONATHAN SMITH
CASE NUMBER:  19-30048-001

## SCHEDULE OF PAYMENTS

Having assessed the defendant's ability to pay, payment of the total criminal monetary penalties is due as follows:

A   ☑   Lump sum payment of $ __100.00__   due immediately, balance due

    ☐   not later than _____ , or
    ☐   in accordance with  ☐  C,   ☐  D,   ☐  E, or   ☐  F below; or

B   ☐   Payment to begin immediately (may be combined with   ☐ C,   ☐ D, or   ☐ F below); or

C   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after the date of this judgment; or

D   ☐   Payment in equal _____ *(e.g., weekly, monthly, quarterly)* installments of $ _____ over a period of _____ *(e.g., months or years),* to commence _____ *(e.g., 30 or 60 days)* after release from imprisonment to a term of supervision; or

E   ☐   Payment during the term of supervised release will commence within _____ *(e.g., 30 or 60 days)* after release from imprisonment. The court will set the payment plan based on an assessment of the defendant's ability to pay at that time; or

F   ☐   Special instructions regarding the payment of criminal monetary penalties:

Unless the court has expressly ordered otherwise, if this judgment imposes imprisonment, payment of criminal monetary penalties is due during the period of imprisonment. All criminal monetary penalties, except those payments made through the Federal Bureau of Prisons' Inmate Financial Responsibility Program, are made to the clerk of the court.

The defendant shall receive credit for all payments previously made toward any criminal monetary penalties imposed.

☐   Joint and Several

    Defendant and Co-Defendant Names and Case Numbers *(including defendant number),* Total Amount, Joint and Several Amount, and corresponding payee, if appropriate.

☐   The defendant shall pay the cost of prosecution.

☐   The defendant shall pay the following court cost(s):

☐   The defendant shall forfeit the defendant's interest in the following property to the United States:

Payments shall be applied in the following order: (1) assessment, (2) restitution principal, (3) restitution interest, (4) fine principal, (5) fine interest, (6) community restitution, (7) JVTA assessment, (8) penalties, and (9) costs, including cost of prosecution and court costs.

KFI
1783
-A65
I45
2000
v. 2

# ILLINOIS
# PATTERN
# JURY INSTRUCTIONS

## IPI
## CRIMINAL

## FOURTH EDITION
### VOLUME 2

Prepared by the
**ILLINOIS SUPREME COURT COMMITTEE
ON
PATTERN JURY INSTRUCTIONS
IN
CRIMINAL CASES**

Supreme Court Library
SPRINGFIELD, ILLINOIS

**ST. PAUL, MINN.
WEST GROUP
2000**

# 14.00

# ROBBERY AND BURGLARY

*Chapter Table of Contents*

|  | Instruction Number |
|---|---|
| Definition of Robbery | 14.01 |
| Issues in Robbery | 14.02 |
| Definition of Robbery of a Victim Who Is 60 Years of Age or Over or Who Is Physically Handicapped | 14.03 |
| Issues in Robbery of a Victim Who Is 60 Years of Age or Over or Who Is Physically Handicapped | 14.04 |
| Definition of Armed Robbery | 14.05 |
| Issues in Armed Robbery | 14.06 |
| Definition of Burglary—Unauthorized Entry | 14.07 |
| Unauthorized Entry—Limited Authority Doctrine—Burglary | 14.07A |
| Issues in Burglary—Unauthorized Entry | 14.08 |
| Definition of Burglary—Authorized Entry But Unauthorized Remaining Within | 14.09 |
| Issues in Burglary—Authorized Entry But Unauthorized Remaining Within | 14.10 |
| Definition of Possession of Burglary Tools | 14.11 |
| Issues in Possession of Burglary Tools | 14.12 |
| Definition of Residential Burglary | 14.13 |
| Issues in Residential Burglary | 14.14 |
| Definition of Criminal Fortification of a Residence or Building | 14.15 |
| Definition of Fortified Condition | 14.15A |
| Issues in Criminal Fortification of a Residence or Building | 14.16 |
| Definition of Criminal Trespass to a Residence | 14.17 |
| Definition of a Residence—Criminal Trespass | 14.17A |
| Issues in Criminal Trespass to a Residence | 14.18 |
| Definition of Aggravated Robbery | 14.19 |
| Issues in Aggravated Robbery | 14.20 |
| Definition of Vehicular Hijacking | 14.21 |
| Issues in Vehicular Hijacking | 14.22 |
| Definition of Aggravated Vehicular Hijacking | 14.23 |
| Issues in Aggravated Vehicular Hijacking | 14.24 |

200

## 14.01 Definition Of Robbery 💾

A person commits the offense of robbery when he [ (intentionally) (knowingly) (recklessly) ] takes property from the person or the presence of another by the use of force or by threatening the imminent use of force.

### Committee Note

720 ILCS 5/18–1 (West, 1992) (formerly Ill.Rev.Stat. ch. 38, § 18–1 (1991)).

Give Instruction 14.02.

In *People v. Jones,* 149 Ill.2d 288, 297, 595 N.E.2d 1071, 1075, 172 Ill.Dec. 401, 405 (1992), the Illinois Supreme Court held that "either intent, knowledge or recklessness is an element of robbery even though the statutory definition of robbery does not expressly set forth a mental state." Accordingly, the Committee has modified this instruction to include those three mental states as alternative elements of this offense.

Specific intent to permanently deprive is not an element of the offense of robbery. *People v. Banks,* 75 Ill.2d 383, 388 N.E.2d 1244, 27 Ill.Dec. 195 (1979).

Use applicable bracketed material.

## 14.02   Issues In Robbery   🖫

To sustain the charge of robbery, the State must prove the following propositions:

*First Proposition:* That the defendant [ (intentionally) (knowingly) (recklessly) ] took property from the person or presence of _____; and

*Second Proposition:* That the defendant did so by the use of force or by threatening the imminent use of force.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

### Committee Note

720 ILCS 5/18–1 (West, 1992) (formerly Ill.Rev.Stat. ch. 38, § 18–1 (1991)).

Give Instruction 14.01.

In *People v. Jones,* 149 Ill.2d 288, 297, 595 N.E.2d 1071, 1075, 172 Ill.Dec. 401, 405 (1992), the Illinois Supreme Court held that "either intent, knowledge or recklessness is an element of robbery even though the statutory definition of robbery does not expressly set forth a mental state." Accordingly, the Committee has modified this instruction to include those three mental states as alternative elements of this offense.

The Committee no longer believes that it is necessary to identify in the instruction the specific property alleged to have been taken from the victim.

Insert in the blank the name of the victim.

When accountability is an issue, ordinarily insert the phrase "or one for whose conduct he is legally responsible" after the word "defendant" in each proposition. See Instruction 5.03.

202

## 14.03  Definition Of Robbery Of A Victim Who Is 60 Years Of Age Or Over Or Who Is Physically Handicapped  🖫

A person commits the offense of robbery of a victim [ (60 years of age or over) (who is physically handicapped) ] when he [ (intentionally) (knowingly) (recklessly) ] takes property from the person or presence of another who is [ (60 years of age or over) (a physically handicapped person) ] by the use of force or by threatening the imminent use of force.

### Committee Note

720 ILCS 5/18–1(b) (West, 1992) (formerly Ill.Rev.Stat. ch. 38, § 18–1(b) (1991)).

Give Instruction 14.04.

P.A. 85–691, effective January 1, 1988, amended Section 18–1, to provide that robbery is raised from a Class 2 felony to a Class 1 felony if the victim is 60 years of age or is a physically handicapped person.

In *People v. White,* 241 Ill.App.3d 291, 301, 608 N.E.2d 1220, 1228, 181 Ill.Dec. 746, 754 (2d Dist.1993), the court agreed with the Committee's determination that the State must plead and prove each of the circumstances set forth in Section 18–1(b) that it is relying on to enhance this offense from a Class 2 to a Class 1 felony.  However, the defendant does not have to *know* that the victim is 60 years of age or older or physically handicapped in order to be convicted under Section 18–1(b). See *White,* 241 Ill.App.3d at 302, 608 N.E.2d at 1229, 181 Ill.Dec. at 755.

If the alleged victim is a physically handicapped person, give Instruction 4.10A defining that term.

In *People v. Jones,* 149 Ill.2d 288, 297, 595 N.E.2d 1071, 1075, 172 Ill.Dec. 401, 405 (1992), the Illinois Supreme Court held that "either intent, knowledge or recklessness is an element of robbery even though the statutory definition of robbery does not expressly set forth a mental state."  Accordingly, the Committee has modified this instruction to include those three mental states as alternative elements of this offense.

Specific intent to deprive permanently is not an element of the offense of robbery.  *People v. Banks,* 75 Ill.2d 383, 388 N.E.2d 1244, 27 Ill.Dec. 195 (1979).

Use applicable bracketed material.

## 14.04   Issues In Robbery Of A Victim Who Is 60 Years Of Age Or Over Or Who Is Physically Handicapped 🖫

To sustain the charge of robbery of a victim [ (60 years of age or over) (who is physically handicapped) ], the State must prove the following propositions:

*First Proposition:* That the defendant [ (intentionally) (knowingly) (recklessly) ] took property from the person or presence of _____; and

*Second Proposition:* That the defendant did so by the use of force or by threatening the imminent use of force; and

*Third Proposition:* That the person from whom the defendant took property was [ (60 years of age or over) (a physically handicapped person) ].

#### Committee Note

720 ILCS 5/18–1(b) (West, 1992) (formerly Ill.Rev.Stat. ch. 38, § 18–1(b) (1991)).

Give Instruction 14.03.

In *People v. Jones,* 149 Ill.2d 288, 297, 595 N.E.2d 1071, 1075, 172 Ill.Dec. 401, 405 (1992), the Illinois Supreme Court held that "either intent, knowledge or recklessness is an element of robbery even though the statutory definition of robbery does not expressly set forth a mental state." Accordingly, the Committee has modified this instruction to include those three mental states as alternative elements of this offense.

Insert in the blank the name of the victim.

Use applicable bracketed material.

When accountability is an issue, ordinarily insert the phrase "or one for whose conduct he is legally responsible" after the word "defendant" in each proposition. See Instruction 5.03.

204

## 14.05  Definition Of Armed Robbery  🖫

A person commits the offense of armed robbery when he, while carrying on or about his person, or while otherwise armed with a dangerous weapon, [ (intentionally) (knowingly) (recklessly) ] takes property from the person or presence of another by the use of force or by threatening the imminent use of force.

### Committee Note

720 ILCS 5/18–2 (West, 1992) (formerly Ill.Rev.Stat. ch. 38, § 18–2 (1991)).

Give Instruction 14.06.

In *People v. Jones,* 149 Ill.2d 288, 297, 595 N.E.2d 1071, 1075, 172 Ill.Dec. 401, 405 (1992), the Illinois Supreme Court held that "either intent, knowledge or recklessness is an element of robbery even though the statutory definition of robbery does not expressly set forth a mental state." Accordingly, the Committee has modified this instruction to include those three mental states as alternative elements of this offense.

Specific intent to permanently deprive is not an element of the offense of robbery. *People v. Banks,* 75 Ill.2d 383, 388 N.E.2d 1244, 27 Ill.Dec. 195 (1979).

Use applicable bracketed material.

## 14.06   Issues In Armed Robbery  🖳

To sustain the charge of armed robbery, the State must prove the following propositions:

*First Proposition:* That the defendant [ (intentionally) (knowingly) (recklessly) ] took property from the person or presence of _____; and

*Second Proposition:* That the defendant did so by the use of force or by threatening the imminent use of force; and

*Third Proposition:* That the defendant carried on or about his person a dangerous weapon or was otherwise armed with a dangerous weapon at the time of the taking.

If you find from your consideration of all the evidence that each of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

### Committee Note

720 ILCS 5/18–2 (West, 1992) (formerly Ill.Rev.Stat. ch. 38, § 18–2 (1991)).

Give Instruction 14.05.

When the alleged weapon in question is not inherently dangerous, give Instruction 4.17.  See *People v. Skelton,* 83 Ill.2d 58, 414 N.E.2d 455, 46 Ill.Dec. 571 (1980).

In *People v. Jones,* 149 Ill.2d 288, 297, 595 N.E.2d 1071, 1075, 172 Ill.Dec. 401, 405 (1992), the Illinois Supreme Court held that "either intent, knowledge or recklessness is an element of robbery even though the statutory definition of robbery does not expressly set forth a mental state."  Accordingly, the Committee has modified this instruction to include those three mental states as alternative elements of this offense.

The Committee no longer believes that it is necessary to identify in the instruction the specific property alleged to have been taken from the victim.

Insert in the blank the name of the victim.

When accountability is an issue, ordinarily insert the phrase "or one for whose conduct he is legally responsible" after the word "defendant" in each proposition.  See Instruction 5.03.

206

## 14.19   Definition Of Aggravated Robbery  🖫

A person commits the offense of aggravated robbery when he [ (intentionally) (knowingly) (recklessly) ] takes property from the person or presence of another by the use of force or by threatening the imminent use of force while indicating verbally or by his actions to the victim that he is presently armed with a firearm.

A person can commit the offense of aggravated robbery even though it is later determined that he had no firearm in his possession when he committed the robbery.

### Committee Note

720 ILCS 5/18–5 (West Supp.1993), added by P.A. 88–144, effective January 1, 1994, and amended by P.A. 88–670, effective December 2, 1994.

Give Instruction 14.20.

When appropriate, give Instruction 18.35G, defining "firearm."

In *People v. Jones,* 149 Ill.2d 288, 297, 595 N.E.2d 1071, 1075, 172 Ill.Dec. 401, 405 (1992), the Illinois Supreme Court held that "either intent, knowledge, or recklessness is an element of robbery even though the statutory definition of robbery does not expressly set forth a mental state." The Committee believes this holding applies as well to aggravated robbery. Accordingly, the Committee has included those three mental states as alternative elements of this offense. See 720 ILCS 5/4–3(b).

Specific intent to permanently deprive is not an element of the offense of robbery. *People v. Banks,* 75 Ill.2d 383, 388 N.E.2d 1244, 27 Ill.Dec. 195 (1979).

Use applicable bracketed material.

## 14.20   Issues In Aggravated Robbery 🖫

To sustain the charge of aggravated robbery, the State must prove the following propositions:

*First Proposition:* That the defendant [ (intentionally) (knowingly) (recklessly) ] took property from the person or presence of _____; and

*Second Proposition:* That the defendant did so by the use of force or by threatening the imminent use of force; and

*Third Proposition:* That the defendant did so while indicating verbally or by his actions to the victim that he was at that time armed with a firearm.

If you find from your consideration of all the evidence that each one of these propositions has been proved beyond a reasonable doubt, you should find the defendant guilty.

If you find from your consideration of all the evidence that any one of these propositions has not been proved beyond a reasonable doubt, you should find the defendant not guilty.

### Committee Note

720 ILCS 5/18–5 (West Supp.1993), added by P.A. 88–144, effective January 1, 1994, and amended by P.A. 88–670, effective December 2, 1994.

Give Instruction 14.19.

When appropriate, give Instruction 18.35G, defining "firearm."

The Committee believes that this instruction need not identify the specific property alleged to have been taken from the victim.

Insert in the blank the name of the victim.

When accountability is an issue, ordinarily insert the phrase "or one for whose conduct he is legally responsible" after the word "defendant" in each proposition.  See Instruction 5.03.